LINDA TIRELLI
COUNSEL FOR DEBTOR
202 MAMARONECK AVEUNE, 3RD FLOOR
WHITE PLAINS, NEW YORK 10601
PH(914) 946-0860

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

**IN THE MATTER OF**

**REPLIQUE D'AMELIO**
**DEBTOR**

**CHAPTER 13**
**CASE NO: 10-36642 (CGM)**

**OBJECTION TO PROOF OF**
**CLAIM #11-1 FILED BY**
**CITIMORTGAGE, INC.**
**AND**
**REQUEST FOR ACCOUNTING**

------------------------------------------------------------------X

---

**MOTION OBJECTING TO PROOF OF CLAIM #11-1 FILED**
**CITIMORTGAGE, INC. AND REQUEST FOR ACCOUNTING**
**AND MOTION FOR FEES AND SANCTIONS**

---

**COME NOW** the above-named debtor, Ms. Replique D'Amelio, by and through her attorney of record, Linda M. Tirelli, pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure respectfully objects to the Proof of Claim #11-1 filed in this case by the above named creditor, CitiMortgage, Inc. and in support hereof respectfully show unto the Court the following:

1. This case was commenced by the filing of a petition with the Clerk of this court on June 2, 2010.

2. The Debtor, Ms. Replique D'Amelio, (hereinafter the "Debtor" or "Ms. D'Amelio") is the owner of real estate located at 25 MARION AVENUE WAPPINGERS FALLS NY 12590. The Debtor resides at this address with her family.

3. The Debtor listed a debt and named CitiMortgage, Inc. as a creditor on Schedule D of her petition, indicating the same as being disputed. A copy of Debtor's Schedule "D" is attached hereto as **Exhibit "A."**

4. On or about July 7, 2010 the purported creditor, CitiMortgage, Inc. (hereinafter "CitiMortgage" or "Creditor") filed a proof of claim identified as claim #11-1. A copy of the Proof of Claim #11-1 is attached hereto as **Exhibit "B."**

5. The 341(a) meeting of creditors was held in Poughkeepsie, New York on July 7, 2010.

6. The Chapter 13 Plan was served on all creditors on July 27, 2010 and is scheduled for confirmation hearing on August 17, 2010.

## I.  FACTUAL ALLEGATIONS

7. Proof of Claim #11-1 as filed by CitiMortgage purports that the debtor owes CitiMortgage the total sum of $389,147.31 on a secured claim, with a purported arrearage owing of $20,268.41.

The Proof of Claim, as filed, includes the following documents:

A. Official form 10, electronically signed by "Michelle R. Garcia, Bankruptcy Specialist" ;

B. A one (1) page itemization entitled, "Exhibit 'A'" claiming monies owed as follows:

    a.  On filing petition 06/02/10 debtor(s) owed claimant $389,147.31.

    b.  11/01/2009 05/01/2010 Payment @ 4.87500% 7 2,679.14 18,753.98

    c.  06/01/2010 06/01/2010 Payment @ 4.87500% 1 2,929.75 2,929.75

    d.  Accrued Late Charge - - 249.90

    e.  Foreclosure Fees - - 279.10

    f.  Late Charge - - 71.40

    g.  Property Inspection - - 126.00

    h.  Subtotal: 22,410.13

    i.  Less Unapplied Funds: 2,141.72

    **j.  TOTAL: 20,268.4**

C. A one (1) page invoice from "First American Title Company National Default Title Services" bearing in part, information as follows:

    a. Invoice Date: 09/18/2009

    b. Invoice Number: D5418596A

    c. Item Code and Description: 52241 Recording Charges-TLM-Title

    d. Total: $75.00

    e. Current Status : **Paid by Servicer**

    f. Loan Number 2003997143

    g. Investor: FNMA

D. A one (1) page invoice from "First American Title Company National Default Title Services" bearing in part, information as follows:

    a. Invoice Date: 09/18/2009

    b. Invoice Number: D5418596B

    c. Item Code and Description: 52241 Recording Charges-TLM-Title

    d. Total: $204.10

    e. Current Status : **Paid by Servicer**

    f. Loan Number 2003997143

    g. Investor: FNMA

E. A series of nine (9) "Invoices" from "Safeguard Properties" of 7887 Safeguard Circle, Valley View, OH 44125, Tax ID Number 26-1503841, as follows:

| Invoice Date | Invoice # | Description | Total Price | Date Completed | Please Pay this Amount | Credits | Net Due |
|---|---|---|---|---|---|---|---|
| 04/17/09 | 8454231 | Contact Attempt | $15.00 | 04/16/09 | $117,312.00 | $117,327.00 | $-15.00 |
| 10/30/09 | 10724877 | Initial Field Inspection | $15.00 | 10/16/09 | $1,486,287.00 | $923,592.00 | $562,695.00 |
| 11/20/09 | 11071489 | Verify If Occupied, VACANT | $15.00 | 11/15/09 | $785.055.00 | $785,055.00 | $0.00 |
| 12/18/09 | 11317713 | Contact Attempt | $13.50 | 12/16/09 | $334,288.50 | $334,288.50 | $0.00 |
| 01/22/10 | 11606474 | Contact Attempt | $13.50 | 01/15/10 | $1,228,143.00 | n/a | n/a |
| 02/19/10 | 11857564 | Contact Attempt | $13.50 | 02/17/10 | $626,332.50 | $626,319.00 | $13.50 |
| 03/26/10 | 12187251 | Contact Attempt | $13.50 | 03/18/10 | $854,455.50 | $854,469.00 | $-13.50 |
| 04/23/10 | 12504488 | Contact Attempt | $13.50 | 04/17/10 | $887,341.50 | $886,045.50 | $1,296.00 |
| 06/25/10 | 13417057 | BANKRUPTCY-NO CONTACT!! | $13.50 | 06/18/10 | $123,349.50 | n/a | n/a |

F.  A three (3) page document entitled "Note" dated November 3, 2006 identifying the named lender as "Home Loan Center, Inc. dba Lending Tree Loans, a California Corporation" and the named borrower as "Replique D'Amelio";

G.  A one page untitled, unnumbered document bearing a hand-drawn square around a stamped-image which reads (at least the legible part) "Pay To Order Of CitiMortgage, Inc. Without Recourse Home Loan Center Inc. DBA Lending Tree Loan By Holly Har_ Asst. Secretary"

H.  A one (1) page document entitled "Dutchess County Clerk Recording Page" indicating the recording of a "Mortgage" identifying the Mortgagor "Replique Damelio, the Mortgagee "Home Loan Center, Inc.", the date recorded "11/16/2006" and number of pages "17."

I.  A fourteen (14) page document entitled, "Mortgage" dated November 3, 2006 identifying the named lender as "Home Loan Center, Inc. dba Lending Tree Loans, a California Corporation," the named borrower as "Replique D'Amelio" and named an additional party as the mortgagee as follows: *"MERS" is the Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns …for purposes of recording this mortgage, MERS is the Mortgagee of Record"*

*J.* A single page document, a purported post-petition "Assignment of Mortgage" dated June 24, 2010 signed by "M. Mathews, Authorized Signator" and notarized by "J. Flores" of the State of Texas and indicates the following parties:

    *a.* Assignor: as "*Mortgage Electronic Registration Systems, Inc. (MERS) solely as nominee for* Home Loan Center, Inc. dba Lending Tree Loans"; and

    b. Assignee: as "CitiMortgage, Inc."

## II.  LEGAL ARGUMENT: LACK REQUIRED DOCUMENTATION AND FRAUD ON THE COURT

6. The Debtor avers that the proof of claim is signed by "Michelle Garcia" on July 7, 2010 without providing any supporting documentation to suggest her authority to do so, contrary to FRBP 3001(b) and the plain language instructions as printed on Official Form 10.

7. The Debtor avers that the purported "Assignment of Mortgage" is signed by "M. Mathews" on June 24, 2010 without any supporting documentation to substantiate his/her authority to do so.

8. The Debtor further avers that the Assignment of Mortgage presented in this case is of fraudulent nature and questionable origin.  Specifically, "M. Mathews" is not an appropriate party to sign and/or authorize such assignments on behalf of *Mortgage Electronic Registration Systems, Inc. (MERS) solely as nominee for* Home Loan Center, Inc. dba Lending Tree Loans.  The Debtor calls the court's attention to the language of the purported mortgage document which indicates MERS "*is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns …**for purposes of recording this mortgage**, MERS is the Mortgagee of Record.(Emphasis added)* At what point, if ever, did MERS become a nominee for any purpose other than recording the mortgage remains a mystery and is not disclosed in the Proof of Claim.  Moreover, the recording coversheet with the land records for the

County of Dutchess indicate the mortgagee as "Home Loans Center, Inc." with no reference to MERS whatsoever.

9. The Court should further know that M. Mathews has also signed numerous documents presented in at least nine (9) other bankruptcy cases throughout the United States, all of which identify the Assignee as "CitiMortgage, Inc." This includes at least one document, an "Affidavit of Lost Assignment" dated August 20, 2009, signed by M. Mathews as the Vice President of CitiMortgage Inc., notarized by "Julie Bacon" and presented in the Eastern District of Arkansas, Chapter 13 Case # 09-12663. ( Hereinafter the "Jackson Affidavit of Lost Assignment") <u>See</u> Certified Copy of said proof of claim, including the Affidavit of Lost Assignment, attached hereto as **<u>"Exhibit "C"</u>**. Approximately 40 days later, M. Mathews executed an Assignment of Mortgage dated September 30, 2009 on behalf the Assignor, "MERS as Nominee for Lehman Brothers, FSB" also notarized by "Julie Bacon" as submitted here, in the Southern District of New York, in case of In re Frusciante #09-22886. A copy of said Assignment of Mortgage is attached hereto as **<u>Exhibit "D"</u>**. The collection of ten (10) documents signed by M. Mathews is summarized in the table prepared by the undersigned attached hereto as **<u>Exhibit "E"</u>** together with copies of all of said documents.

10. To the extent that M. Mathews is a Vice President of CitiMortgage as stated under oath in the Jackson Affidavit of Lost Assignment, the debtor avers that M. Mathews would have a serious conflict of interest acting as an officer of both the Assignor and the Assignee in the instant case. The Debtor avers that the more likely scenario is that M. Mathews is not who he/she purports to be in any of the documents and lacks any personal knowledge and any authority to actually transfer the asset of any entity in this case.

11. The Debtor hereby avers that the Assignment of Mortgage presented by CitiMortgage, Inc. in the case at bar to be a fraudulent document fabricated and presented under oath subject to penalty of perjury with the intention and purpose of misleading the Court, the Debtor, the Chapter 13 Trustee and all parties affiliated with Ms. D'Amelio's Chapter 13 Bankruptcy case.

### III.   LEGAL ARGUMENT: CITIMORTGAGE, INC. FAILED TO BRING CLAIM IN THE NAME OF THE REAL PARTY IN INTEREST AND LACK OF STANDING

#### a. CITIMORTGAGE INC., IS NOT THE REAL PARTY IN INTEREST

12.  According to the invoices from "First American Title Company National Default Title Services" (hereinafter "Title Invoices") as attached to the CitiMortgage Proof of Claim, the "Investor" of the loan is identified as "FNMA".  Both of said invoices are marked in bold lettering "Paid By Servicer."

13. The Debtor avers that "FNMA" referred to on the Title Invoices is an acronym for "Federal National Mortgage Association" a/k/a "Fannie Mae", A government-sponsored enterprise (GSE) that was created to expand the flow of mortgage money by creating a secondary mortgage market. Fannie Mae is a publicly traded company which operates under a congressional charter that directs Fannie Mae to channel its efforts into increasing the availability and affordability of homeownership for low-, moderate-, and middle-income Americans. The Debtor further avers that Fannie Mae purchases and guarantees mortgages that meet its funding criteria. Through this process it secures mortgages to form mortgage-backed securities (MBS).  Pension funds, insurance companies and foreign governments are among the investors in Fannie Mae's MBS.  Fannie Mae also holds a large portfolio of its own and other institution's MBSs, known as its retained portfolio.

14. Fannie Mae maintains a public website with a loan look up tool on its home page located at www.FannieMae.com .  The loan look up tool allows the user to find out

whether or not their mortgage is owned by FNMA.  According to the Fannie Mae loan look up tool, Ms. D'Amelio's loan is owned by Fannie Mae.  Attached here to as **Exhibit "F"** is the screen shot from the Fannie Mae public website confirming the loan to be an asset of FNMA.

15. To the extent the debtor's loan is part of a pool of loans as an MSB, the identity of the Fannie Mae pool or "Trust" may be the true owner of the Debtor's mortgage loan.

16. The proof of claim purposely omits and /or otherwise inexcusably fails to identify the real owner of the debtor's loan or CitiMortgage,Inc's relationship with the owner, if any, or CitiMortgage's authority to attempt to collect a debt in its own name.

17. It is well established that the omission of material facts and presentation of false and/or misleading facts is an abuse of process worthy of sanctions.

In the case of In re Schuessler, 386 B.R. 458 (Bankr. S.D.N.Y. 2008)  the Honorable Judge Cecelia Morris in a 62 page decision dissected the case as an abuse of process, stating, in part as follows:

" A creditor's inattentiveness can be just as abusive of process as an intentional act of misconduct. Under the facts in this case, the actions of the Mortgage Servicer constitute an abuse of process that this Court has a duty to rectify pursuant to 11 U.S.C. §105(a), regardless of whether or not the abuse is the result of intentional conduct. This lengthy introduction, and the Court's findings of fact set forth below, are intended to serve as a warning to all creditors that, in this Court's view, the conduct of the Mortgage Servicer in this case (including acts that were taken and not taken by its employees, agents and attorneys) constitute an abuse of process. Even where creditors, such as the Mortgage Servicer in this case, devise a system designed to insulate them from any accountability or evidence of an intentional act or misrepresentation, this does not mean that the system itself will not constitute an abuse of process; nor does it render this Court powerless to identify and correct such abuses." Id at 464 (emphasis added)

18. In the instant case, the false, misleading and wholly inaccurate information as to the identity of the owner of the Debtor's loan was a carried out by CitiMortgage and third parties involved with the fabrication of documents.  Such acts are not simple "mistakes" but egregious acts of fraud upon the court.

The Hon. Judge Morris cites Massachusettes cases of <u>In re Schwartz</u>, 366 B.R.265 (Bankr. D. Mass. 2007) and <u>Nosek v. Ameriquest Mortgage Company</u> (<u>In re Nosek</u>), 286 Br. 374 (Bankr DMass. 2008). Both of which are further applicable to the case at bar.

<u>In re Schwartz</u>, 366 B.R.265 (Bankr. D. Mass. 2007) concerns a Motion for Relief to pursue an eviction. Movant asserted that the  property had been foreclosed upon prior to the date of the bankruptcy petition. The pro se debtor asserted that the Movant was required to show that it had authority to conduct the sale. Movant, and "the party which appears to be the current mortgagee…" provided documents for the court to review, but did not ask for an evidentiary hearing. Judge Rosenthal found that the Movant and the current mortgagee had failed to prove that the foreclosure was properly conducted and further found that there was no evidence of a proper assignment of the mortgage prior to foreclosure. However, at footnote 5, Id. at 268, the Court also finds that there is no evidence that the note itself was assigned and no evidence as to who the current holder might be.  In the instant case, the only Assignment of Mortgage is post petition, unrecorded and fabricated for the purpose of suiting CitiMortgage's own agenda.  Furthermore, the Note is unendorsed with no evidence of a transfer or negotiation to CitiMortgage.


In the case of Nosek v. Ameriquest Mortgage Company (In re Nosek), 286 Br. 374 (Bankr D Mass. 2008) one year after Schwartz , Judge Rosenthal issued a second opinion on an order to show cause. Judge Rosenthal specifically found that, although the note and mortgage involved in the case had been transferred from the originator to another party within five days of closing, during the five years in which the chapter 13 proceeding was pending, the note and mortgage and associated claims had been prosecuted by Ameriquest which **(as CitiMortgage, Inc. in the instant case)** has represented itself to be the holder of the note and the mortgage. Not until

September of 2007 did Ameriquest notify the Court that it was merely the servicer.

In fact, only after the chapter 13 bankruptcy had been pending for about three years

was there even an assignment of the servicing rights. Id. at 378.

Because these misrepresentations were not simple mistakes: as the Court has noted

on more than one occasion, those parties who do not hold the note or mortgage do

not have standing to pursue motions for leave or other actions arising from the

mortgage obligation. Id at 380.

So too in the instant case, CitiMortgage's deliberate act of crafting or causing to

craft a bogus assignment of mortgage to fool the court does not "create " standing

where clearly none exists.

19. In line with the sanctions imposed and warning issued in the New York case of In re

Schuessler, the parties involved with the filing of a false and/or misleading claim, as

in the instant case should be sanctioned accordingly:

> "The Court does not regard the exercise of restraint in this case to be a
> limitation on the sanctions that might be imposed in the future against Chase
> Home Finance or another mortgage servicer if this abuse occurs again. If
> Chase Home Finance, **other mortgage servicers and any employees,
> third-party vendors, or any attorneys involved in the process at any
> level** exhibit the same type of abusive conduct in the future, this Court
> believes that Section 105(a) authorizes sanctions of increasing severity. "
> Schuessler at 494. (Emphasis added)

20. The minimum constitutional requirements for standing in a federal court are: proof of

injury in fact, causation and redressability. Valley Forge Christian College vs.

Americans United for Separation of Church & State, Inc. 454 U.S. 464, 472 (1982).

The Note presented by CitiMortgage in the instant case is unendorsed on its face and

save for an unrecorded bogus Assignment of Mortgage, CitiMortgage, Inc. has not

shown that it has any stake in the ownership of the Note and Mortgage as either a

holder or owner. In fact, the public record maintained by FNMA indicates an entirely

different owner as aforesaid.[1]  The Debtor is at a loss to fully determine at this phase what party owns her mortgage loan ( ie the Note and Mortgage) and is at a further loss to know what party (if any) she is to pay.

21. CitiMortgage, Inc. neglected to identify it's own pecuniary interest (or any other interest) in the subject note and mortgage and further fails to identify the owner of the Note and Mortgage (believed to be the Certificate Holders of a Fannie Mae Trust) and provides no basis for not joining either holder or owner of the Note and Mortgage as the real party(s) in interest. Moreover, CitiMortgage, Inc. provides no proof of so much as a servicer agreement naming itself as the Servicer to the Fannie Mae or any Trust maintained by Fannie Mae.

22.  The Debtor avers that CitiMortgage, Inc. has failed to substantiate its contention that it is a real party in interest and has otherwise failed to join a real party in interest. As a matter of law, CitiMortgage, Inc. lacks standing to seek relief from  this federal court.


**B.CITIMORTGAGE, INC. LACKS CONSTITUTIONAL STANDING TO FILE THE INSTANT CLAIM SEEKING RELIEF IN A FEDERAL COURT**


23. The United States Constitution Article III §2 specifically limits the jurisdiction of the federal courts to "Cases or Controversies." Justice Powell delivered the Opinion of the Supreme Court in the case of Warth v. Seldin addressing the question of standing in a federal court as follows:

"In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of the particular issues. This query involves both constitutional limitations on federal court jurisdiction and

---

[1] Based upon information obtained through a telephone call to FNMA, it is the policy of Fannie Mae that beyond the online loan locator tool, it will not divulge any further written documentation or information regarding the ownership of a particular loan or the identity of the pool  of loans or trust of which it is a part, without a subpoena.

prudential limitations on its exercise. In its constitutional dimension, standing imports judiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art.III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of judiciability, the standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal –court jurisdiction and to justify exercise of the court's remedial powers on his behalf. Baker v. Carr 369 U.S.186,204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663(1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party…A Federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threat or actual injury resulting from the putatively illegal action…" Linda R.S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146,1148, 35 L.Ed.2d 536 (1973)." Warth v. Seldin 422U.S.490, 498 (1975)

"Apart from this minimum constitutional mandate, this Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers. … even when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, this Court has held that the **plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties**. E.g., Tilestion v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943)." Warth v. Seldin 422U.S.490, 499 (1975) (**emphasis added**)

24. As set forth hereinabove, CitiMortgage, Inc. cannot assert its own interest in the outcome of the instant claim it is making, or any perceived injury to itself.  Instead, CitiMortgage, Inc. presumably seeks to redress an alleged wrong to what is presumed to be a third party or parties, (ie, the holder and owner of the Debtor's

Note and Mortgage) and thus the claimant in the case at bar lacks standing in a federal court. CitiMortgage, Inc. cannot bring this claim without properly either identifying direct injury or threat of injury to itself or by joining a real party in interest.

25. The Debtor in the instant case reiterates that a party seeking to file a claim in any Federal Court "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v American Tobacco Company, 183 F.3d 488, 494 (6th Cir. 1999)*. Again, the minimum constitutional requirements for standing are: proof of injury in fact, causation, and redressability. *Valley Forge Christian College v Americans United for Separation of Church & State, Inc., 454 U.S. 464, 473 (1982)*. Furthermore, in order to satisfy the requirements of Article III of the United States Constitution, any claimant asserting rights in a Federal Court must show he has personally suffered some actual injury as a result of the conduct of the adverse party. *Coyne, 183 F.3d at 494; Valley Forge, 454 U.S. at 472*.

26. CitiMortgage, Inc., fails to meet the requirements for standing in a Federal Court. If CitiMortgage, Inc. is actually an agent of a secured creditor, it must provide proof of agency and join the real party in interest. It is not uncommon in the bankruptcy context for a servicing agent to state that it is the authorized agent of the note holder. A "party in interest" in the bankruptcy court is a broad concept, and arguably, a servicing agent might be a party in interest.( See, Greer v. O'Dell, 305 F.3d 1297, 1302-03 (11th Cir. 2002).) However, the servicing agent does not have standing as a ***real party in interest*** : "Federal Courts have only the power authorized by Article III of the Constitutions and the statutes enacted by Congress pursuant thereto. ... [A] plaintiff must have Constitutional standing in order for a

federal court to have jurisdiction." In re Foreclosure Cases, 521 F.Supp. 3d 650, 653 (S.D. Ohio, 2007) (citations omitted).

27. CitiMortgage Inc., if it is the servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show it's agency status and that the principle is the holder. (See In re Vargas, 396 B.R. 511 (Bankr. C.D. Cal. 2008) at 520.) In the instant case, CitiMortgage, Inc. does not substantiate the position nor does it offer documentation to indicate it has agency with the actual holder or owner and further problematic, the Movant has not sought relief as an agent of a holder. Instead, CitiMortgage,Inc. falsely names itself a "secured creditor" thereby creating the illusion that it is a holder and owner with rights to enforce the note.

28. The Debtor avers that the Courts have not hesitated to sustain objections to claims where, as here, the claimant has not demonstrated standing. See In re Jones, 2008 WL 4539486, at *5 (Bankr. D. Mass. Oct. 3, 2008) (assignment of mortgage required to establish accurate chain of ownership of mortgage); see also In re Hayes, 393 B.R. 259, 270 (Bankr. D. Mass. 2008) (order entered sustaining objection to proof of claim where bank failed to demonstrate standing, either by showing that it held note or mortgage or that it serviced loan); see also in re Maisel, 378 B.R. 19, 22 (Bankr. D. Mass. 2007) (bank filing lift-stay motion must demonstrate standing).

29. The Debtor avers that CitiMortgage, Inc does not have constitutional standing to bring a claim in the instant case.

## c. CITIMORTGAGE, INC. LACKS STANDING AS PER APPLICABLE UCC PROVISIONS

30. In bankruptcy proceedings, State substantive law controls the rights of note and lien holders, as the Supreme Court pointed out almost forty (40) years ago in United States v. Butner, 440 U.S.48, 54-55 (1979). In order to enforce a note, the party seeking to collect is required to show that it is the holder. A holder is an entity that has acquired the note either as the original payor or transfer by endorsement of order paper or physical possession of bearer paper. These requirements are set out in Article 3 of the Uniform Commercial Code, which has been adopted in every state, including New York. As set forth hereinabove, CitiMortgage, Inc. in its Proof of Claim identifies itself as a "creditor" and provides only false and misleading documentation. CitiMortgage simply cannot substantiate itself as a "Holder" of the note or mortgage.

31. UCC Article 3 governs negotiable instruments, specifically defining what a negotiable instrument is and how ownership of such paper is transferred.

§3-104 (1) any writing to be a negotiable instrument….must

    (a) Be signed by the maker or drawer; and

    (b) contain an unconditional promise or order to pay a sum certain in money, and no other promise, order, obligation or power given by the maker…; and

    (c) Be payable on demand or at a definite time; and

    (d) payable to order or bearer.

32. Ordinary negotiable instruments include notes. See § 3-104(2)(d) Negotiable paper is transferred from the original payor by negotiation. §3-301. "Order paper" must be endorsed; bearer paper need only be delivered. §3-305. However, in either case, for the note to be enforced, the person who asserts the status of the holder must be in possession of the instrument. (See UCC § 1-201 (20) and comments.) Both the

original and subsequent transferees are referred to as "holders." (See UCC § 3-305 ) The UCC provides that a payment to a party "entitled to enforce the instrument" is sufficient to extinguish the obligation of the person obligated on the instrument. Clearly, then, only a holder – a person in possession of either a note which is endorsed to it *or* a holder of bearer paper – may seek satisfaction or enforce rights in collateral such as real estate.

33. The Debtor avers that the Note is simply unendorsed and is therefore is not bearer paper. CitiMortgage, Inc. does not offer any documentation to substantiate itself as a holder as required under the UCC.

34. CitiMortgage, Inc. deceptively identified itself as a creditor and in doing so, failed to join the Holder or the Owner of the mortgage loan as indispensible parties.


**d. CITIMORTGAGE, INC. LACKS STANDING AS PER APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE AND BANKRUPTCY PROCEDURE**

35. In the bankruptcy courts, procedure is governed by the Federal Rules of Bankruptcy and Civil Procedure. Procedure has an undeniable impact on the issue of "who" can assert a claim as a holder, because pleading *and* standing issues which arise in the context of our federal court system. According F.R.Civ. Pro. 17, *"[a]n action must be prosecuted in the name of the **real party in interest**."* (emphasis added)

36. An Objection to Proof of claim, is a contested matter, governed by F. R. Bankr. P. 9014, which makes F.R. Bankr. Pro. 7017 applicable to such motions. F.R. Bankr. P. 7017 is, of course, a restatement of F. R. Civ. P. 17.

37. The Debtor avers that the *real party in interest* in a federal action to enforce a note, whether in bankruptcy court or federal district court, is the *owner* of a note. Because the actual name of the actual note holder is not stated, CitiMortgage's very claim is defective.

38. In the case of Deutsche Bank Nat'l Trust Co. v. Steele, 2008 WL 111227 (S.D. Ohio) January 8, 2008, the Honorable Judge Abel found that Deutsche Bank had filed evidence in support of its motion for default judgment indicating that MERS was the mortgage holder. There was not sufficient evidence to support the claim that Deutsche Bank was the owner and holder of the note as of that date. In following In re Foreclosure Cases, 2007 WL 456586, the Court held that summary judgment would be denied "until such time as Deutsche Bank [the movant] was able to offer evidence showing, by a preponderance of evidence, that it owned the note and mortgage when the complaint was filed." 2008 WL 111227 at 2. Deutsche Bank was given twenty-one days to comply. Id.

39. In a very recent decision on March 10, 2009, the Honorable Philip H. Brandt, US Bankruptcy Judge for the Western District of Washington cited the matter of In Re Jacobson , 19 CBN 522 (Bankr. W.D. Wash. 2009) and denied a motion filed by a servicing agent for lack of standing because it was not brought in the name of the party who had the right to enforce a deed of trust and did not establish that the movant was authorized to act on behalf of the party who had such right.

40. In the case at bar, the claimant, CitiMortgage, by its own admissions in its own pleadings establishes only that it is neither the holder nor the owner of the note. CitiMortgage neither asserts that it has a beneficial interest in the unendorsed note nor that it could enforce the note in its own right.

## V. LEGAL ARGUMENT: THE POST-PETITION ASSIGNMENT OF MORTGAGE IS VOIDABLE TRANSFER PURSUANT TO BANKRUPTCY CODE §549(s)(1)(B)

41. Section 549 of the U. S. Bankruptcy Code pertains to such transfers as described hereinabove and reads as follows:

"(a) Except as provided in subsection  (b) and (c) of this section, the trustee

may void a transfer of property of the estate……

 (1)That occurs after the commencement of the case; and …

 _____ (B) that is not authorized under this title or by the court."


42. The assignment of mortgage attached to the Proof of Claim #11-1, is dated June 24,

2010, well after the date of the commencement of this chapter 13 bankruptcy

proceeding on June 2, 2010.


43. The assignment of mortgage is an attempt to perfect a lien after the commencement

of the case and therefore is voidable by this Court.

44. The debtor avers that there can be no reason for the assignment of the mortgage to

CitiMortgage, Inc. other than to perfect or attempt to perfect a claim in the

residential real estate or to transfer property of the bankruptcy estate.


## VI. LEGAL ARGUMENT: THE POST-PETITION ASSIGNMENT OF MORTGAGE IS A VIOLATION OF BANKRUPTCY CODE SECTION 362 (a)(4)

45. Section 362(a)(4) of the United States Bankruptcy Code reads as follows:

"(a)…..a petition filed under section 301, 302, and 303 of this title, ….operates as

a stay, applicable to all entities, of…

  (4) any act to create, perfect, or enforce any liens against

property of the estate;"

46. The assignment of mortgage is an attempt to create, perfect or enforce a lien

against property of the estate in violation of §362(a)(4) of the U. S. Bankruptcy

Code.

47.    There can be no reason for the "assignment" of the mortgage to CitiMortgage, Inc. other than to perfect or attempt to perfect a claim in the residential real estate or to transfer property of the bankruptcy estate.


## VII.   LEGAL ARGUMENT: THE POST-PETITION ASSIGNMENT OF MORTGAGE IS A VIOLATION OF BANKRUPTCY CODE SECTION 362 (a)(5)

48.    Section 362(a)(4) of the United States Bankruptcy Code reads as follows:

"(a)…..a petition filed under section 301, 302, and 303 of this title, ….operates as a stay, applicable to all entities, of…

(4) any act to create, perfect, or enforce against property of the debtor any lien to the extent that lien secures a claim that arose before the commencement of the case under this title;"


49.    The assignment of mortgage is an attempt to create, perfect or enforce a lien against property of the Debtor, based upon an alleged claim that arose before the commencement of this case and is therefore in violation of §362(a)(5) of the U.S. Bankruptcy Code.


50.    There can be no reason for the "assignment" of the mortgage to CitiMortgage, Inc. other than to perfect or attempt to perfect a claim in the residential real estate or to transfer property of the bankruptcy estate.


## VIII.   LEGAL ARGUMENT: THE PROOF OF CLAIM DOES NOT PROVE A PERFECTED SECURITY INTEREST IN DEBTOR'S PROPERTY

51. CitiMortgage has failed to provide any documentation reflecting a valid security interest in Debtor's property.  The post-petition attempt to cure the deficiencies have been without authority, in violation of law and a fraud upon this Court.

52. As a direct and proximate result of the willful violations of the automatic stay, the Debtor is entitled to the recovery of actual and punitive damages from CitiMortgage as per §362(k)(1) of Title 11 of the United States Code.

53. As a direct and proximate result of the willful violations of the automatic stay, the Debtor is entitled to the recovery of actual and punitive damages from CitiMortgage as per §262(k)(1) of Title 11 of the United States Code.

## IX. LEGAL ARGUMENT: THE PROOF OF CLAIM FAILS TO SUBSTANTIATE ITEMIZATION OF THE CLAIM

54. That the Proof of Claim includes a summary sheet which describes alleged Arrearages owed as of June 2, 2010 as follows:

| From | To | Type of Charge | # | Unit Charge | Total |
|------|-----|----------------|---|-------------|-------|
| 11/01/2009 | 05/01/2010 | Payment @ 4.87500% | 7 | 2,679.14 | 18,753.98 |
| 06/01/2010 | 06/01/2010 | Payment @4.87500% | 1 | 2,929.75 | 2,929.75 |
| | | Accrued Late Charge | - | - | 249.90 |
| | | Foreclosure Fees | - | - | 279.10 |
| | | Late Charge | - | - | 71.40 |
| | | Property Inspection | - | - | 126.00 |

Subtotal: 22,410.13

Less Unapplied Funds: 2,141.72

**TOTAL: 20,268.41**

55. That in accordance with the terms of the note and mortgage attached to the proof of claim, Debtor's monthly payment is based on a principal amount of $369,000.00 and

a fixed interest rate of 6.875%.  Said Note indicates Debtor's "payment" to be $2424.06 per month.

56. That the "payment" described in the chart included in Citimortgage's proof of claim indicates a sum of $2,679.14, for the months of November 1, 2009 through May 1, 2010, **with no explanation or accounting for the difference of $255.08 per payment which adds up to an additional $1785.56 on the loan**.


57. That the "payment" described in the chart included in Citimortgage's proof of claim indicates a sum of $2,929.75, for the month of June1, 2010, **with no explanation or accounting for the difference of $ 505.69.**

58. That the additional charges listed as "Accrued Late Charges" offer a total of $ $249.90 but fails to indicate a unit charge and quantity and further fail to provide a writing to substantiate each item as required by B.R. 3001(c).

59. That the additional charges listed as "Foreclosure Charges" offer a total of $ $279.10 but fails to indicate a unit charge and quantity and further fail to provide a writing to substantiate each item as required by B.R. 3001(c).

60. That the additional charges listed as " Late Charge" offer a total of  $71.40 but fails to indicate a unit charge and quantity and further fail to provide a writing to substantiate each item as required by B.R. 3001(c).

61. That the additional charges listed as "Property Inspections" offer a total of $126.00 but fails to indicate a unit charge and quantity and further fail to provide a writing to substantiate each item as required by B.R. 3001(c).

62.  The claim further give light into the shady accounting practices of CitiMortgage in that it credits the Debtor's account with "Unapplied Funds" in the amount of $2141.72 without indicating why there are unapplied funds, how the have accrued or why they were not applied to the debtor's account when received.  The Debtor avers

that pursuant to the 2009 amendments to the Truth in Lending Act, all sums received MUST be applied to the debtors account on the day received and therefore, there should be no "unapplied" funds. Moreover, there is nothing offer by CitiMortgage to explain the existence of unapplied funds.

63. Specifically, CitiMortgage fails to provide anything to substantiate any of the added fees and costs and while there are "invoices" affixed to the proof of claim, there is no explanation for the cause of the services and nothing in the loan documents which indicates the debtors obligation to pay the same.

The Invoices include "title loss mitigation charges" without any indication as to why titlework was needed in 2009. The additional invoices reference a property inspection which resulted in the dtermination of "Vacant" which seems hard to believe as the Debtor's family of four continuously occupied the property since 2006. The Debtor is further outraged at the invoices for "Contact Attempt" and even one for "Bankruptcy No Contact!" with running totals that exceed the mortgage and shows an intermingling of accounts. Nothing in the loan documents authorizes the charges claimed.

64. The Debtor avers a complete life of loan transaction history and full accounting is warranted as the calculations of the claims set for the by CitiMortgage are nonsensical.

## X. LEGAL ARGUMENT: THE ASSIGNMENT OF MORTGAGE , IF AUTHENTIC, GIVES RISE TO VIOLATION 15 U.S.C. 1641 (F) AND STATUTORY DAMAGES PURSUANT TO 15 U.S.C. 1640(A)

65. Recent amendments to Section 404 of Public Law 111-22 reads in relevant part as follows:

**SEC. 404. NOTIFICATION OF SALE OR TRANSFER OF MORTGAGE LOANS.**

(a) IN GENERAL.—Section 131 of the Truth in Lending Act
(15 U.S.C. 1641) is amended by adding at the end the following:

"(g) NOTICE OF NEW CREDITOR.—

"(1) IN GENERAL.—In addition to other disclosures required by this title, **not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer**,

 "(A) the identity, address, telephone number of the new creditor;

 "(B) the date of transfer;

 "(C) how to reach an agent or party having authority to act on behalf of the new creditor;

 "(D) the location of the place where transfer of ownership of the debt is recorded; and

 "(E) any other relevant information regarding the new creditor.

"(2) DEFINITION.—As used in this subsection, the term 'mortgage loan' means any consumer credit transaction that is secured by the principal dwelling of a consumer.".

 **(b) PRIVATE RIGHT OF ACTION.—Section 130(a) of the Truth in Lending Act (15 U.S.C. 1640(a)) is amended by inserting "subsection (f) or (g) of section 131," after "section 125,".** (**Emphasis Added**)

66. 15 U.S.C. 1640(a) Civil Liabilities provides for damages to the debtor as follows:

 (a) **Individual or class action for damages; amount of award; factors determining amount of award**
Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
  (1) any actual damage sustained by such person as a result of the failure;
  (2)
  (A) …
   (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000…"

67. 15 U.S.C. 1640(a)(B)(3) further provides for additional damages including the costs

 of the action and reasonable attorneys fees, as determined by the Court.

68. The Assignment affixed to the Proof of Claim offered by CitiMortgage, Inc.  is dated

 June 24, 2010**.**  The Debtor requests the Court to take judicial notice that the date of

this instant pleading is August 17, 2010, which is well past the 30 days required for notice under §131 of the Truth in Lending Act.

69. As of the date of this pleading, the Debtor has not received notice of the purported June 24, 2010 assignment of her mortgage to CitiMortgage, Inc., despite CitiMortgage's statutory obligation to provide such to the debtor.  The Debtors aver that the fact this obligation was not met by CitiMortgage,Inc. in the face of statutory damages, further evidences the likelihood that the Assignment of Mortgage is a false document and not a valid assignment.

70. To the extent the purported Assignment of Mortgage in the instant case is deemed a valid assignment and CitiMortgage Inc. is determined to be the new assignee, the Debtor hereby reserves her right to seek statutory damages, costs and an award of legal fees from CitiMortgage, Inc..

**WHEREFORE,** the debtors pray of the Court as follows:

A.     That Proof of Claim #11-1 be expunged;

B.     That Court direct the Chapter 13 Trustee to strike the proof of claim of CitiMortgage, Inc.;

B.     That CitiMortgage, Inc. be precluded from filing any amended, modified or substitute claim in this case;

C.     That CitiMortgage, Inc. provide an accounting of all figures set forth in its proof of claim.

D.     That the Debtor have and recover against CitiMortgage a sum to be determined by the Court in the form of actual damages;

E.     That the Debtor have and recover against CitiMortgage a sum to be determined by the Court in the form of statutory damages;

F.     That the Debtor have and recover against CitiMortgage a sum to be determined by the Court for punitive damages;

G.     That the Debtor have and recover against CitiMortgage a sum to be determined by the Court all legal fees and expenses incurred by her attorney; and

H.     That the debtor have such other and further relief as the Court may deem just and proper.

This the 17th Day of August, 2010

   /S/ Linda M. Tirelli
Linda M. Tirelli, Esq.,
Counsel for the Debtor
Law Offices of Linda M.Tirelli
202 Mamaroneck Avenue, 3rd Floor
White Plains, NY 10601
PH (914)946-0860
Fax(914)946-0870