| UNITED STATES BANKRUPTCY COURT Eastern District of Arkansas, Little Rock Division | PROOF OF CLAIM |
|---|---|

Name of Debtor:
FLORIA B. JACKSON -- SS No. XXX-XX-8613

Case Number:
09-12663

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
CitiMortgage, Inc.

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:

CitiMortgage, Inc.
P.O. Box 6941
The Lakes, NV 88901-6941

I hereby attest and certify on November 13, 2009 that the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.
CLERK, U. S. Bankruptcy Court
Eastern and Western Dist. of Ark.
By _Anthony Harris_ Bankruptcy Deputy Clerk

Court Claim Number: _____
(If known)

Filed on: _____

Telephone number:
(636) -

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

1. **Amount of Claim as of Date Case Filed:**   $ 48,851.40

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

X Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** Money loaned
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:   X Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe:

   Value of Property: $ _____   Annual Interest Rate 8.00000 %

   Amount of arrearage and other charges as of time case filed included in secured claim,

   if any: $ 4,649.16   Basis for perfection: _____

   Amount of Secured Claim: $ 48,851.40   Amount Unsecured: $ 0

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

   Specify the priority of the claim.

   ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

   ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

   **Amount entitled to priority:**

   $ 0

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**FOR COURT USE ONLY**

Date:
07/17/2009

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. /s/ Saundra Haley Bankruptcy Specialist

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Exhibit 'A'

Case No.: 09-12663

Debtors: FLORIA B. JACKSON -- SS No. XXX-XX-8613

Address: 710 VANDERBILT AVE
WEST MEMPHIS, AR 72301-0000

Loan No.:4871

On filing petition 04/16/09 debtor(s) owed claimant $48,851.40.

ARREARAGES owed as of 04/16/09, the date of filing of the petition.

| From | To | Type of Charge | # | Unit Charge | Total |
|---|---|---|---|---|---|
| 10/01/2008 | 04/01/2009 | Payment | 7 | 609.35 | 4,265.45 |
| | | Accrued Late Charge | - | - | 146.22 |
| | | Interest on Escrow | - | - | - |
| | | Late Charge | - | - | 170.59 |
| | | Property Inspection | - | - | 6.90 |
| | | Property Inspection | - | - | 60.00 |
| | | | - | - | - |
| | | | | Subtotal: | 4,649.16 |
| | | | | TOTAL: | 4,649.16 |

The above figures represent the delinquency at the time of filing and do not reflect payments received after the date of the filing of the bankruptcy.

Late charges accrue to the account when payments are received 0 days past the payment due date.

# NOTE

Multistate

File Number:

January 15, 1999

710 Vanderbilt, West Memphis, Arkansas  72301
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the Person's successors and assigns. "Lender" means Pulaski Mortgage Company

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of   SIXTY ONE THOUSAND SIX HUNDRED FIFTY AND NO/100--------------------------------------------------
Dollars (U.S. $ 61,650.00            ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of    Eight
percent (          8.000%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on March 1, 1999                    . Any principal and interest remaining on the first day of     February
2029    , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at    Pulaski Mortgage Company, P.O. Box 7200, Little Rock, AR 72217      or at such other place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of $    452.37          . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Growing Equity Allonge              ☐ Graduated Payment Allonge
☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

LOAN NUMBER:

FHA Multistate Fixed Rate Note - HUD Rev. 10/95
Effective  6/96

Initial(s) FBJ
FDS Form Number DCMU1S1

Page 1 of 2
First Data Systems, Inc.



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4.000%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
Floria B. Jackson              -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

PAY TO THE ORDER OF
SOURCE ONE MORTGAGE SERVICES CORPORATION (Seal)
                               -Borrower
WITHOUT RECOURSE

PULASKI MORTGAGE COMPANY

BY: _____
    HERB HYMAN
    VICE-PRESIDENT

PAY TO THE ORDER OF
SOURCE ONE MORTGAGE CORP.
WITHOUT RECOURSE
Source One
Mortgage Services Corporation
BY: _____
W. Klemet, Authorized Signer

Page 2 of 2

LOAN NUMBER:
FHA Multistate Fixed Rate Note - HUD Rev. 10/95
Effective 6/96

A Certified True Copy
*Donna Palmer*
**Donna Palmer**
**Circuit Court Clerk**
By *Natasha Swalker*
**Deputy Clerk**

1172

This Deed of Trust is being re-recorded to add the 203-K Verbage.

BOOK 0952 PAGE 961

0351

BOOK 0950 PAGE 408

[Space Above This Line For Recording Data]

**State of Arkansas**

# MORTGAGE

FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on January 15, 1999
The Mortgagor is Floria B. Jackson, An Unmarried Person

whose address is  710 Vanderbilt, West Memphis, Ar  72301
("Borrower"). This Security instrument is given to
Pulaski Mortgage Company

which is organized and existing under the laws of   the State of Arkansas   , and whose
address is  P.O. Box 7200, Little Rock, AR 72217
("Lender"). Borrower owes Lender the principal sum of
SIXTY ONE THOUSAND SIX HUNDRED FIFTY AND NO/100------------------------------------
----------------------------------------------------------------------
Dollars (U.S. $ 61,650.00     ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on February 1, 2029    . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
Crittenden                                                                                                County, Arkansas:
Lot 6 in Block 3 of the Westwood Acres Subdivision, Sixth Addition, to the
City of West Memphis, Arkansas, as shown on plat of record in Plat Book 2 at
page 469 in the office of the Circuit Court Clerk and Ex-Officio Recorder of
Crittenden County, Arkansas.

The Rehabilitation Loan Rider is incorporated by reference and made a part
of the security instrument.

BN76290

which has the address of    710 Vanderbilt, West Memphis                      [Street, City],
Arkansas       72301             [ZIP Code], ("Property Address");

Loan #:

Initial(s) FBJ                              Page 1 of 6                        FHA Arkansas Mortgage - 4/96
FDS Form Number DCAR1SM         First Data Systems, Inc.                       1-615-361-8404

BOOK 0950 PAGE 409

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

Loan #:

Initial(s) FB J    Page 2 of 6    FHA Arkansas Mortgage - 4/96



BOOK 0950 PAGE 410

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), the Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

Loan #:

Initial(s) _____   Page 3 of 6   FHA Arkansas Mortgage - 4/96

BOOK 0950 PAGE 411

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  Sixty (60) Days  from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to  Sixty (60) Days  from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

  10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

  11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

  12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(h). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

  13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

  14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

Initial(s) FLB J                    Page 4 of 6                    Loan #:
                                                                   FHA Arkansas Mortgage - 4/96



BOOK 0950 PAGE 412

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

Loan #:

Initial(s) _L.B.T_    Page 5 of 6    FHA Arkansas Mortgage - 4/96

BOOK 0950 PAGE 413

BOOK 0952 PAGE 966

Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Graduated Payment Rider
- [X] Other [specify]  Rehabilitation Loan Rider
- [ ] Growing Equity Rider

Provisions pertaining to release are contained in the Rehabilitation Rider which is attached to this mortgage and made a part thereof

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____  ___Floria B. Jackson_____ (Seal)
                             Floria B. Jackson         -Borrower

_____  _____ (Seal)
                                                      -Borrower

_____  _____ (Seal)
                                                      -Borrower

                           _____ (Seal)
                                                      -Borrower

STATE OF ARKANSAS        ) ss:     ACKNOWLEDGEMENT
COUNTY OF CRITTENDEN

This day personally appeared before me, the undersigned, a duly commissioned, qualified, and acting Notary Public, within and for said County and State, the within-named Floria B. Jackson, An Unmarried Person to me personally known as the grantor in the foregoing Mortgage, and acknowledged that she signed, executed, and delivered the same on the day and year therein mentioned, for the uses, purposes, and considerations therein mentioned and set forth.

Witness my hand and Notarial Seal, this 15th day of January, 1999.

                    _Brenda K. Hardin-Gregory_
                    Brenda K. Hardin-Gregory, Notary Public

My Commission expires on the 4th day of April, 2002.

This Instrument was prepared by Roy Pugh Abstract Co. Inc., of 306 Missouri # 7, West Memphis, AR 72301.

Loan #:

Page 6 of 6                                    FHA Arkansas Mortgage - 4/96

Lot 6 in Block 9 of the Westwood Acres Subdivision, South Addition to the City of West Memphis, Arkansas, as shown on plat of record in Plat Book 2 at page 469 in the office of the Circuit COurt Clerk and Ex-Officio Recorder of Crittenden County, Arkansas

AR

## ASSIGNMENT OF DEED OF TRUST

KNOW ALL MEN BY THESE PRESENT:

That PULASKI MORTGAGE COMPANY in consideration of One Dollar ($1.00) and other valuable considerations to it in hand paid by SOURCE ONE MORTGAGE SERVICES CORPORATION receipt of which is hereby acknowledged, does hereby sell, transfer, assign, set over and deliver unto the said SOURCE ONE MORTGAGE SERVICES CORPORATION and unto its successors and assigns forever, without recourse, the following to-wit:

(a) That certain mortgage executed by Floria B. Jackson an unmarried person unto James C. East, Trustee for Pulaski Morgage Company dated January 15, 19 99, filed for record in the office of the Recorder of Crittenden County, in the Town or City of West Memphis, as Instrument # _____ in Book # _____, Page # _____, on the _____ day of _____, 19 _____.

(b) Also the Note and Indebtedness described in, and now secured by the instrument aforesaid.

TO HAVE AND TO HOLD the same unto the said SOURCE ONE MORTGAGE SERVICES CORPORATION and unto its successors and assigns forever.

EXECUTED this 25 day of January, 19 99

PULASKI MORTGAGE COMPANY

By _____
Herb Hyman
Vice President

BY _____
TERESA M. McCLEARY
LOAN SHIPPER

PULASKI MORTGAGE COMPANY
6584 POPLAR AVE. #115
MEMPHIS, TN. 38138
PREPARED BY TERESA M. MCCLEARY

STATE OF TENNESSEE         ACKNOWLEDGEMENT
COUNTY OF SHELBY

On this 25 day of January, 19 99, before me, the undersigned, a Notary Public, duly commissioned, qualified and acting within and for the said County and State, appeared in person the within named Herb Hyman and Teresa McCleary, to me personally well known, who stated that they were the Vice President and Loan Shipper, respectively of Pulaski Mortgage Company a corporation, and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that they had so signed, executed and Delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal, this 25 day of January 19 99.

_____
Notary Public

KAREN L. LUNSFORD
My commision expires: 08/03/99

1379 PAGE 848

5073

Return To: M. E. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

**AFFIDAVIT OF LOST ASSIGNMENT**

BE IT KNOWN that on this 8/20/2009, before me, the undersigned authority, a Notary Public duly commissioned and qualified in and for the State and County aforesaid, personally came and appeared M. Mathews who, upon being duly sworn, did depose and state as follows:

1. That he is the Vice President of/ for CITIMORTGAGE, INC. , ("Affiant") and is duly authorized to execute this Affidavit of Lost Assignment ("Affidavit") in such capacity; and

2. That Affiant is the holder, owner and/or servicer of that certain loan or obligation evidenced by a certain promissory note (the "Note") and mortgage, Deed of Trust or Deed to Secure Debt (the "Mortgage") identified as follows:

   Date of Note: 1/15/1999
   Original Principal Amount: $ 61,650.00
   Original Borrower: FLORIA B JACKSON, AN UNMARRIED PERSON
   Original Mortgagee: PULASKI MORTGAGE COMPANY
   Mortgage/Deed of Trust Recording Date: 1/19/1999
   Book 0950 Page 408
   County: Crittenden          State: AR
   DEED OF TRUST RE-RECORDED TO ADD 203-K VERBAGE 02/16/1999 (BOOK 0952, PAGE 961)
   Property Address: 710 VANDERBILT, WEST MEMPHIS, AR 72301

3. Based upon a diligent search of the property records, and the records of Affiant, it appears that the Assignment of Mortgage from PULASKI MORTGAGE COMPANY , P.O. BOX 7200, LITTLE ROCK, AR 72217 ("Grantor/Assignor") to CITIMORTGAGE, INC. , 1111 Northpoint Drive, Bldg. 4, Ste. 100, Coppell, TX 75019 ("Grantee/Assignee") was never recorded and inadvertently not completed, and it is not now obtainable for the following reasons, to wit:
   ORIGINAL LOST AND NEVER RECORDED

4. That the purpose of this Affidavit is to establish such facts.

JACKSON MAS

CITIMORTGAGE, INC.

By: _____
M. Mathews, Vice President

Prepared By: M. Mathews
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092          AR Crittenden          CMI/BKRUPTCY/ASN

Return To: M. E. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

**AFFIDAVIT OF LOST ASSIGNMENT**

1379 PAGE 849

State of Texas, County of Tarrant
On the 8/20/2009 before me, the undersigned, a Notary Public in and for said State, personally appeared M. Mathews, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which individual(s) acted, executed the instrument.

Notary Public, Julie Bacon
My Commission Expires: November 30, 2010



JULIE BACON
Notary Public, State of Texas
My Commission Expires
November 30, 2010

Witness: Shirley Raney

Witness: T. Peatrowsky

State Of Arkansas
County Of Crittenden
Filed For Record The
24th Day Of Aug 2009
At 11:24 O'Clock A M
And Recorded In Book
1379 Page 848
Donna Palmer, Circuit Clerk
By Carolyn Perry D.C.

Prepared By: M. Mathews
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

AR Crittenden

CMI/BKRUPTCY/ASN

